Good morning, your honors. Katie Hurlbrink on behalf of Mr. Orozco-Barron. I'll keep an eye on my time and try to reserve two minutes. This Speedy Trial Act appeal turns on whether general orders could issue wholesale exclusions in fall 2020, a time when trials were moving forward and courts were managing their own schedules. Here, in continuing Mr. Orozco-Barron. I'll stop you right there. I'm sorry. You did get one full sentence in before. But when you said courts were managing their own schedules, my understanding, I want you to correct me right at the outset if I've got this wrong, trials had resumed, but they were creeping along and they were being sort of rationed. There were only a few courtrooms available, or maybe only one. Is that what you mean when you say they were managing their own schedule? Your honor, it's true that trials were proceeding at a slower pace, that there were many fewer courtrooms available. The court was able to complete 14 trials in the fall of 2020. That's court as a whole, not this judge, right? That's correct, Your Honor. But I think the key here is that courts at that point were entering the only continuances that were being entered in their individual cases. They were deciding when motions were scheduled, when trial was scheduled, whether to continue status hearings. And so that's the first reason why these chief judge orders couldn't exclude time, because they don't meet the statute's plain text. They did not exclude a delay resulting from a continuance. To be sure, in March 2020, when the court first shut down, these general orders were continuing all jury trials. But on August 24, 2020, the district's judges voted unanimously to go ahead and lift that trial suspension. And specifically, that order told individual district judges to work with one another and with the clerk of court to decide who was going to get trials and to otherwise manage their own calendars. So all district judges at that time had full schedule and control over all of their cases. These chief judge orders were no longer entering continuances in the meaning of the statute. I appreciate the clarification. Thank you. Sure. So the government's only response to this plain text point is to say that these chief judge orders were granting continuances in fall of 2020 because these March 2020 continuances were perpetuated through the relevant period. We know that's not true from several different indicators, but one of them is just the plain language, the face of the March 2020 chief judge order itself. That order says, yes, that all jury trials in civil and criminal cases will be continued for the next month. But after that, it states that, quote, new trial or status dates will be set in individual cases unless this emergency suspension of trials is continued. So on the face of the March 2020 CJO, it contemplates that once the trial suspension is lifted, these continuances would be no more. As a result, when these chief judge orders were excluding time, they were not excluding a delay resulting from a continuance. They were just excluding a period that had no continuance attached to it, and so they do not meet the statutory language. Additionally, we know that all jury trials were not being continued because trials were going forward, as discussed with Judge Kristen earlier. And there are no continuances entered in Mr. Orozco-Baron's case that correspond to the dates of these CJOs or the periods that were purportedly excluded. So for all of these reasons, these exclusions just don't meet the statute's terms. A second independent reason why these CJOs cannot exclude time is that they did not assess defendants' speedy trial interests on an individualized basis. Rather, they purported to enter exclusions in hundreds of cases simultaneously without even knowing the facts underlying those cases. In other words, they treated the pandemic as dispositive of the exclusion. But in Olson, this court reversed a district court's decision to focus solely on whether it was possible to bring a defendant to trial. Rather, the court determined that the district court should have focused on other, quote, relevant non-statutory factors. These were individualized factors, like whether the defendant was detained and the seriousness of the charges. And so Olson belies the notion that the difficulty of bringing a defendant to trial would be dispositive, and that's how these orders treat these exclusions. They treat them as dispositive without even doing any factual inquiry, as required by this court's case in Lloyd, to determine what the facts are, whether any individual defendant could have a speedy trial interest that outweighs other competing interests. And the final point I want to hit before I reserve the remainder of my time is that this court may not weigh competing speedy trial interests for the first time on appeal. Because the district court relied solely on the exclusions embodied in these chief judge orders, and these chief judge orders did not weigh the Olson factors, did not weigh any individualized information, this court cannot go back and do that weighing for the first time on appeal. We briefed this extensively in our reply, pointing to cases of this court, but I would particularly point your honors to United States v. Zedner, the Supreme Court case, and it states that the findings supporting an ends-of-justice exclusion must be made before granting a continuance. It therefore rejected the government's suggestion that the court look back and determine in hindsight whether, quote, the ends-of-justice balance in fact supported an exclusion. What relief are you seeking? Forgive me for interrupting, but you're almost out of time. What relief are you seeking? We're seeking that your honor remand with instructions for the district court to dismiss. Wait, wait, wait, wait. Dismissed with prejudice or without prejudice? Our proposal would be that the district court make the determination whether the dismissal be with prejudice or without prejudice in the first instance. Would there be any problem with re-indictment? At this point, no, your honor. At least I don't believe so. To my understanding, the statute of limitations has not run. And with that, I'll reserve the remainder of my time. Good morning, your honors. May it please the court. Mark Grady for the United States. Your honors, in this case, the district court properly denied the motion to dismiss on speedy trial grounds, and we are not trying to create ad hoc or post hoc rationalizations here. When one reviews the record, excerpt of record 25, the district court made clear that it was relying on the penancy of chief judge orders. And to address one of the points or the last point the defense counsel made, we understand that there have to be case-by-case findings to support a speedy trial act exclusion. But what we would submit is that in the unique circumstances of a once in a hundred years pandemic, hopefully it'll be that much longer, if at all, before the next one comes, that the reasons cited in the chief judge orders do satisfy the statute. The statute just requires the court to put its reasons for finding that the ends of justice outweigh on the record. Here, every chief judge order, starting with 18, it refers to the nation. Counsel, can I back you up? I think that position is well briefed. But it seems to me, then, if I'm understanding your position correctly, if the pandemic had continued apace and not abated so that those chief judge orders were still in place now, would it be your position that it would be sufficient for an order like this to deny a speedy trial act motion? Well, I suppose it would depend on what those individual chief judge orders said. Let's assume that's a fair point. So from my hypothetical, let's say there's no case-specific information other than the chief judge orders, which I will summarize unfairly as referring to the pandemic and the public health emergency. My point is that in Olson, that Olson opinion anticipated that the public health emergency wouldn't, couldn't justify denying speedy trial act motions forever. Do you agree with that? Do you read it differently? No, I don't. Okay. So that's my problem because I'm looking for case-specific findings in this case. And I think, and I mean, you know, the record is what it is. The only case-specific finding that I can point to, though, is that every 30 days, every chief judge order thereafter looked back at the circumstances and said they have not abated significantly. And if you had that CDC guidance about no public gatherings of 10 people, the government's position is, you know, and that was what I was hoping to see in the reply brief, how could any individual circumstances necessarily outweigh that? You literally have government agencies declaring states of emergency like- Forgive me, but I think you're, I know I keep interrupting you. Oh, no. I think what you're doing, though, is you're asking us to do the weighing after the fact to make the findings, and we can't enter those reasons, right? The Supreme Court has told us that. Well, definitely you have to, the reasons for the exclusions have to be in the judge's mind at the time. And here the district court said, I've had those chief judge orders in mind. In fact, I wrote many of them. And without a doubt, and, you know, I want to be clear, we're not trying to do any after the fact. The only reason I addressed those Olson factors is that when I read Olson, it wasn't clear to me that those could only be considered by the district court. In fact, the concurrence in that opinion of pages 1156 to 1157, I thought this court was still referring to those factors because I know the concurrence said, well, the dissent says we're only relying on factor seven, but we're talking about them all. But I'm not trying to add things that weren't in the district judge's mind. Sure. And I think all of my colleagues in the Ninth Circuit have remarked so many times how much easier it was for the appellate court to operate during the pandemic. So all of this 2020 Heinstein stuff is tough. But my next question is whether the motion that sought dismissal, did it argue case-specific factors, like the ones argued on appeal, you know, diabetes, his detention status, and so on and so forth? Do I have it here? I don't believe so. And if I'm wrong about that, I... It's not in the transcript. I have the motion here as well, but it's not in the transcript. That's why I asked. Yeah. And, you know, the only thing I would say is at least we do know from the record, before ruling on that motion to dismiss in June of 2020, the district court was aware of several things. Because I know, for example, on reply, the defense says, well, the judge never took into consideration the detained status of the defendant. At Excerpt of Record 142 at the October 21, 2020 hearing, the judge says, we've got a fellow in custody. At Supplemental Excerpt of Record 10, which is the December 2, 2020 hearing, the judge says, it's been tough on you in custody, and I see you're wearing a mask today. So those... Correct. And at that point, that was when the defense, you know, I believe they said, well, he's 55, diabetes, and blood pressure. And then the court came back and denied that and said, well, there have been very few documented cases at the facility where he's at. And, you know, I think the record indicates that there were no, you know, exaggerated or exacerbated circumstances, and the defendant did not appeal that. Right. But is it your position that that would be sufficient, or does the law tell us? Has the Supreme Court said that those reasons have to be baked into the articulated, I should say, rather than implied in the order denying the motion for Speedy Trial Act dismissal? I mean, they do have to be explicit. That is our position. But, you know, the only thing I would say is that judges are also presumed to know the law. And here, at least you know that the district court was not being willy-nilly about this and, you know, was aware that the defendant was detained. But another point I did want to make, too, though, as far as those Olson factors, because I know that the defense says there was zero discussion, the government would submit that seventh factor, that seventh Olson factor, as whether the court could safely conduct a trial. When one looks at the rationale that Judge Burns gives, especially an excerpt from Record 25 to 26, that's exactly what he's talking about. Right. And so that's what, if I could just do, on that point, when trials were completely shut down, that was a public health emergency, and that factor pretty well trumped. But it wouldn't have trumped forever. I think you've conceded that point. At some point, our Constitution would have required that charges would have been dismissed, right? Yes. Okay. So as the pandemic wore on, it seems to me that these factors become more and more important. Yeah. I wouldn't disagree with that either. Okay. What's also interesting to me, I mean, I think this may be the only speedy trial act appeal from our district in that entire time. Oh, I know. They were absolutely doing their best. Yeah. We appreciate that. But unless the panel has any further questions, we would submit on our briefing. Okay. Thank you. Thank you. Now you have some time for rebuttal. Your Honors, I would like to pick back up with Judge Kristen's point about what the judge was considering and what he was weighing at the motion-to-dismiss stage. The rules under this Court's case law, cases like Engstrom, is that at the motion-to-dismiss stage, even the district court itself cannot add rationales or enter a retroactive ends-of-justice exclusion that was not entered originally. So, in other words, as the district court was continuing Mr. Orozco-Baron's individual case, if the court wanted to exclude time, the court was required to say something on the record to the effect that time was being excluded. The court could not go back after the fact and say, oh, well, while I was entering those continuances, I was really thinking about the ends-of-justice. That's not allowed. And so because the district court was silent on the record as he was continuing Mr. Orozco-Baron's individual case, the only possible basis for excluding time would be these chief judge orders. And we know these chief judge orders were not considering Mr. Orozco-Baron's individualized circumstances. We know that because they were entering exclusions in hundreds of cases simultaneously, and the government must defend the August 14th, September 14th, and October 14th orders in order to prevail. But the district judge didn't even meet Mr. Orozco-Baron until after that and had no reason to learn about his case. So any comments that the court made in December after the 70 days had already run or at the motion to dismiss hearing could not change the fact that these chief judge orders did not engage in any individualization. And, in fact, that's why there was no reason to argue individualized factors in the motion to dismiss, because at that point it was too late for the court to go back and decide for the first time, okay, I'm going to— Counsel, you asked for individualized determinations, or the defense did, I don't mean you personally, and yet I don't think the motion argued them. Is that right? Rather, I would quibble with that a little bit, Your Honor. The motion suggested that because no valid exclusions, no individual exclusions were entered on the record that 70 days had run, the motion did not argue that the district court could go back and retroactively or in retrospect do an individualized balancing that it had not done previously before the 70 days had run. What did defense counsel mean when defense counsel asked in the transcript for individualized findings? I believe what defense counsel said was that the 70 days had run because there had, in the past, there had to be specific exclusions of time specific to Mr. Orozco-Baron's case. So, in other words, defense counsel was making the point that because there were no individualized exclusions in the past, the clock had run and the case had to be dismissed under the Speedy Trial Act's mandatory dismissal remedy. Okay. Okay. We thank both sides for their argument. The case of United States v. Orozco-Baron is submitted.
judges: BEA, IKUTA, CHRISTEN